Zhao v. Wilkinson

BIA
Christensen, IJ
A208 617 791

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

    At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of February, two thousand twenty-one.

PRESENT:
        ROSEMARY S. POOLER,
        RICHARD J. SULLIVAN,
        STEVEN J. MENASHI,
            *Circuit Judges.*

_____

SHOULONG ZHAO,
        *Petitioner,*

        v.                                        19-398
                                                  NAC
ROBERT M. WILKINSON, ACTING
UNITED STATES ATTORNEY GENERAL,
        *Respondent.*[1]

_____

FOR PETITIONER:          Gerald Karikari, Karikari &
                         Associates, P.C., New York, NY.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Robert M. Wilkinson is automatically substituted for former Acting Attorney General Jeffrey A. Rosen as Respondent.

**FOR RESPONDENT:** Linda S. Wernery, Assistant Director; William C. Minick, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that this petition for review of a decision of the Board of Immigration Appeals ("BIA") is DENIED.

Petitioner Shoulong Zhao, a native and citizen of the People's Republic of China, seeks review of a January 30, 2019, decision of the BIA affirming a December 12, 2017, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Shoulong Zhao,* No. A208 617 791 (B.I.A. Jan. 30, 2019), *aff'g* No. A208 617 791 (Immig. Ct. N.Y. City Dec. 12, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have reviewed the IJ's decision as supplemented by the BIA. *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). "We review the BIA's legal conclusions de novo, and its factual findings . . . under the substantial evidence standard." *Y.C. v.*

2

*Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B).

## I. Past Persecution

While the Immigration and Nationality Act does not define persecution, the BIA has defined it as "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Baba v. Holder*, 569 F.3d 79, 85 (2d Cir. 2009) (internal quotation marks omitted); *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985), *overruled in part on other grounds by INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). Past persecution can be based on harm other than threats to life or freedom, "includ[ing] non-life-threatening violence and physical abuse," *Beskovic v. Gonzales*, 467 F.3d 223, 226 n.3 (2d Cir. 2006), but the harm must be sufficiently severe to rise above "mere harassment," *Ivanishvili*, 433 F.3d at 341; *see also Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) ("[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." (internal quotation marks omitted)). "[T]he difference between harassment and persecution is necessarily one of degree that must be decided on a case-by-case basis."

3

*Ivanishvili*, 433 F.3d at 341.

The agency did not err by determining that Zhao's past harm did not rise to the level of persecution. Zhao testified that police beat his back with a baton, but that the pain was not bad and that he did not seek medical treatment afterwards. Zhao also testified that he disarmed one of the officers and used a police baton to beat both of them, fracturing one officer's arm and incapacitating the other. Based on this testimony, the agency reasonably determined that Zhao's harm did not rise to the level of persecution because he (1) was not seriously injured, and (2) did not seek medical treatment. *See Jian Qiu Liu v. Holder*, 632 F.3d 820, 821–22 (2d Cir. 2011) (upholding agency's determination that applicant's past harm — being slapped in the face, punched repeatedly, and subsequently detained for two days — did not rise to the level of persecution).

Zhao's reliance on *Beskovic* for the proposition that even a minor beating can rise to the level of persecution is misplaced. In *Beskovic*, we held that "[t]he BIA must . . . be keenly sensitive to the fact that a 'minor beating' or, for that matter, any physical degradation designed to cause pain, humiliation, or other suffering, may rise to the level

4

of persecution *if it occurred in the context of an arrest or detention on the basis of a protected ground*." 467 F.3d at 226 (emphasis added). But Zhao was not arrested or detained when the police hit him on the back, and the agency considered the context of his beating. *See id.* In any event, regardless of whether harm is inflicted upon an individual engaged in a protected act, an applicant has the burden to show that the harm was sufficiently severe. *See* 8 U.S.C. § 1158(b)(1)(B); *Ivanishvili*, 433 F.3d at 341. Here, the level of harm is less severe than that in *Jian Qiu Liu*, where the applicant was "punched . . . repeatedly in the face, chest, and back" by several family planning officials before being detained for two days. 632 F.3d at 821.

## II. Future Persecution

Absent past persecution, a noncitizen may establish eligibility for asylum by demonstrating a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(2); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). To do so, an applicant must show either a reasonable possibility that he will be singled out for persecution or that the country of removal has a pattern or practice of persecuting similarly situated individuals. *See* 8 C.F.R.

5

§ 1208.13(b)(2)(iii); *In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005) (explaining that a pattern or practice of persecution involves the "systemic or pervasive" persecution of a group). "In the absence of solid support in the record," a fear of persecution is not well founded and "is speculative at best." *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005). Zhao does not challenge the agency's finding that he will be singled out for assaulting two police officers rather than for practicing his religion; therefore, he has waived review of that determination. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

The agency reasonably concluded that Zhao did not show a pattern or practice of persecution of Christians. In support of this argument, Zhao relied solely on the State Department's 2017 International Religious Freedom Report (the "IRF Report"), arguing that it showed that the Chinese government considers Christianity to be an evil cult. However, the IRF Report was more nuanced, stating that the Chinese government considers 13 specific Christian groups to be evil cults. But Zhao does not allege that he belongs to one of those groups.

6

On appeal, Zhao also argues that an updated 2018 Religious Freedom Report shows that China has a pattern of detaining, torturing, and harassing Christians. But that report, which was released in June 2019, was not before the agency at the time of the BIA's January 2019 decision. *See* 8 U.S.C. § 1252(b)(4)(A) (limiting judicial review to "the administrative record on which the order of removal is based"). Zhao could have moved to reopen in the BIA for consideration of that report. *See* 8 C.F.R. § 1003.2(c) (providing for motions to reopen for consideration of new evidence before the BIA); *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 262 (2d Cir. 2007) ("[W]e should not exercise [any inherent power to remand] if: [i] the basis for the remand is an instruction to consider documentary evidence that was not in the record before the BIA; and [ii] the agency regulations set forth procedures to reopen a case before the BIA for the taking of additional evidence."). In any event, that report does not identify widespread persecution of Christians in Fujian Province, Zhao's home region. Thus, even if we had inherent authority to remand, Zhao has not identified "sufficiently compelling circumstances" to do so on the basis of this report. *Xiao Xing Ni*, 494 F.3d at 267 (internal

7

quotation marks omitted).

Likewise, the 2017 IRF Report before the BIA did not identify government action against Christians in Fujian Province, other than the 20-day detention of a Catholic bishop. Further, the 2017 IRF Report suggested that millions of Protestants practice in unregistered churches in China. It also explained that authorities in some areas allow unregistered churches to hold services, although authorities in other areas target such churches for abuse. Given the large number of Christians practicing in unregistered churches, the fact that restrictions on their activities vary by region, and the lack of evidence that Christians in Fujian Province face heightened restrictions, the agency did not err in determining that Zhao did not establish a pattern or practice of persecution of similarly situated Christians. *See* 8 C.F.R. § 1208.13(b)(2)(iii); *Santoso v. Holder*, 580 F.3d 110, 112 & n.1 (2d Cir. 2009) (upholding denial of pattern or practice claim where evidence reflected that violence was not nationwide and that Catholics in many parts of Indonesia were free to practice their faith); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 149, 169–70 (2d Cir. 2008) (finding no error in requiring locality-specific evidence

8

where the record reflects that conditions vary by region).

### III. Torture

Zhao's argument that he is more likely than not to be tortured if he returns to China given his past encounter with the police and China's pattern and practice of persecuting Christians is likewise unavailing. As explained above, the agency did not err in rejecting Zhao's pattern or practice claim. Further, even if he is imprisoned in China based on his past encounter with the police, he has not submitted particularized evidence as needed to meet his burden of showing that he is more likely than not to be tortured in prison. *See Mu Xiang Lin v. U.S. Dep't of Justice*, 432 F.3d 156, 160 (2d Cir. 2005) (concluding that "particularized evidence" beyond State Department reports is necessary to establish eligibility for CAT protection for applicant alleging she would be tortured for leaving China illegally); *Jian Xing Huang*, 421 F.3d at 129 ("In the absence of solid support in the record . . . , [an applicant's] fear is speculative at best."); *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 (2d Cir. 2003) (an applicant for CAT relief must show a likelihood of torture in "his particular alleged circumstances" as a military deserter). Specifically, on

appeal to the BIA and in his brief in this Court, Zhao did not identify any evidence that someone in his particular circumstances is likely to be tortured in prison.

At Zhao's request, the IJ took administrative notice of the State Department's 2016 Human Rights Report for China, which states that former prisoners have reported being tortured in China and notes that torture is a "systemic" problem. But the report does not state that prisoners arrested for attacking the police are targeted for torture. Thus, the IJ reasonably concluded that this report did not show a likelihood of torture for someone in Zhao's particular circumstances. *See Mu Xiang Lin*, 432 F.3d at 160; *Mu-Xing Wang*, 320 F.3d at 144. And the administrative record does not contain any other evidence to support Zhao's claim.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10